The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, the first case today we're going to hear is Malvo v. Mathena and Mr. McGuire. Good morning, Your Honors, and may it please the Court. Matt McGuire on behalf of Warden Mathena. The issue presented in this case is whether the U.S. Supreme Court's decision in Miller v. Alabama requires Lee Boyd Malvo, one of the D.C. snipers who arbitrarily killed ten people and wounded numerous others in Virginia, Maryland, and the District of Columbia, to be resentenced for the capital murders of Linda Franklin and Kenneth Bridges and the attempted capital murder of Caroline Sewell. The answer is no for three reasons. First, Miller prohibits only mandatory life without parole sentences, and Virginia does not impose that sentence for any homicide offense. Put differently, Miller did not categorically prohibit life without parole sentences, and Montgomery did not order all pre-Miller offenders resentenced. Second, Malvo's decision to plead guilty to avoid the possible imposition of the death penalty in Spotsylvania County waives any Miller claim he may have had with respect to those two sentences. And third and finally, Malvo had the opportunity and did present copious mitigation evidence in Chesapeake, Virginia during his trial there. And he simply Okay. With respect to that, did he do it in the context and with the understanding that there was a possibility of something less than a mandatory life sentence without parole? Judge Diaz, I think it's a two-part question. The first is he did put all the evidence on during the guilt phase initially, and the trial court there said he asked to put it all again on the sentencing phase to the jury, where there was a jury instruction saying death or life without parole, that much is true. That's a standard jury instruction sort of in Virginia death penalty cases because you don't want the jury to think that he might get out. They want that instruction. But all that evidence was also How long has that been the standard instruction? I'm not sure, Judge King. I'll try to find out the answer for rebuttal. But it's been consistent practice that that's the standard instruction is death or life without parole. He was tried under that instruction. That's correct, Judge King. But the same sentencing judge that actually imposed sentence in March 2004 heard all of that mitigation evidence, and the record shows that she asked as part of that sentencing hearing, does anybody have any other evidence that they would like to put on? Malvo's counsel said no. And the critical point, Judge Diaz, is that the law that the Virginia Supreme Court has relied on to say that Virginia does not have mandatory sentencing, that there is discretion for the trial judge, 19.2-303, has never distinguished between a life sentence, any term of year sentence, or any other sentence. It simply said that the court may suspend in whole or in part the sentence. So the question here is not did the court actually undertake an analysis to say whether or not she would suspend the sentence. It's that Malvo never asked the trial court to undertake that analysis. And what Miller says in Well, Jones hadn't been decided, right? That's correct, Judge Diaz. But the law remained the same. The Virginia Supreme Court didn't look to Virginia law to adopt any sort of real novel construction of what the statute said. The statute on its terms then, as it does today, said the trial court may suspend in whole or in part sentences that are otherwise that are not mandatory minimum sentences under Virginia law where they're required. And you think that that complies with, and I know you dispute this, but assuming we find that Miller actually has two holdings, that is that a mandatory life scheme is problematic, but there's also the process by which juveniles have to be sentenced because juveniles are different with respect to their commission of defenses. Do you think that that process, that post-conviction sentencing discretion process by the trial judge, is enough to satisfy Miller? Judge Diaz, yes, we do. We think because the judge had discretion, as you put it, to impose less than a life sentence. But he didn't know it. Well, Judge King, Malvo didn't ask for the trial court to undertake that analysis. The trial court in the record. The record doesn't reveal that the judge or the prosecutor or the defense lawyer understood the proposition you're prompting. Judge King, we looked to the positive law in Virginia, and the statute in Virginia explicitly said that the trial court had the authority to suspend in whole or in part, and it speculated what the trial court itself thought. Has the trial court exercised that? It's never been exercised in a capital case. Would it be exercised at the time of sentencing initially, or is this something that would be exercised later on, a few years down the road? You usually have a suspended sentence as part of the imposition of the sentence itself, so the defendant would get a life sentence. It's usually being done initially. That's correct, Judge King. But the court didn't recite that he understood he could suspend in whole or in part. Correct. The life sentence. That's correct, Judge King. That was required under which he was tried. That's correct. That everybody in the courtroom understood. Well, the point is, Judge King, it's speculative what the trial court thought. The trial court didn't say, I have no authority to suspend this sentence. She had a pre-sentence report prepared, which is designed to bring mitigation evidence to the attention of the court. She asked if the parties intended to cross it. She understood it was life without parole. That's what she told the jury. Well, because at the death phase, that is what they wanted the jury to be told. That was the only thing the jury was ever told, and that was the only thing that was on his record. Everybody understood it was life. It was either death or life without parole. For the jury, Judge King. But that doesn't speak to what the authority of the trial court was. Well, was there anything in the record after that that they understood there was a different authority that was something other than life without parole, that the jury verdict didn't come in with the life, with the death? No, Your Honor, but that's saying that the Commonwealth and the trial court had to know before Roper, before Miller, before everything that it needed to say on the record that I'm choosing not to exercise the suspension authority. It absolves Melvin. Does the suspension authority apply to a death sentence? Your Honor, it applies. Let me see if I can pull it up. Well, if the jury had given him a death sentence, could the judge, under your theory, have undercut the death penalty under the suspension authority that you're arguing now? I'm not aware that the jury's report has ever addressed the Judge King, but the statute itself says after conviction, whether with or without the jury, the court may suspend imposition of the sentence. It may suspend the sentence in whole or in part. So your answer to that question would be yes, under the plain text of the statute, which has been in existence for a while. But if I could, I'd like to back up to the first point that I started with this morning, which is that Miller's plain holding simply doesn't apply to states that do not have mandatory life sentencing schemes. Well, what does Montgomery do to Miller? It looks to me like Miller is a little ambiguous. Miller clearly made a hold of him and gave his reasons. But when they announced the rule that there would be a contractual action in Montgomery, the court was pretty categorical. It basically said you cannot suffer public safety. Miller, it is true, did not bar punishment for all juvenile offenders like the court did in Wilbur and Grant. Miller did bar life without parole for all but the rarest juvenile offenders, those whose crimes reflect permanent incorrigibility. And so the question is, there was never a determination made as to whether Malvo was permanently incorrigible for purposes of Montgomery. And the court went on to say you didn't need to resentence everybody. All you needed to do, but that was a little bit of a hook, because then the court said what you do need to do, you can correct the sentence by providing some probation aspect, which would let the defendant out earlier if he earned it based on maturity and that type of trait. And so I'm just wondering how this sentencing could fit under the rule, Miller rule, as announced in my judgment actually enhanced in Montgomery. There are a variety of questions in your judgment. You know the dissent in Montgomery thought the court actually enhanced it, but that is the court. Right. So let me try to take this in a few different parts. First, the Chesapeake jury did, so first, Montgomery does not impose an actual incorrigibility finding requirement. The opinion expressly disclaims that there needs to be a specific finding on the record that the defendant is incorrigible. So you may need some factors that indicate incorrigibility, and we would submit that the record. It prohibits sentencing of anybody to life without parole categorically unless in the rare, can you call it the rare case, unless the rare case, all but the rarest of juvenile offenders. Those whose crimes reflect permanent incorrigibility. So, Judge Niemeyer, we would submit, wait, this certainly is that case. This has to be the rarest of individuals. You say that this is the case. This fellow is incorrigible. That's right, Judge King. That's our position. But no sentencing court has ever found that. Well, Judge King, yes, they did. We're a federal appeals court, and there are sentencing courts in Chesapeake County, and they're responsible for fighting it. None of them have found it. They absolutely did, Judge King. The jury here found that he constituted a future danger to society, and that's what made him death eligible, and the reason why there was a whole sentencing hearing about whether or not they were going to impose the death penalty on Mr. Malvo. They didn't get to that. Because they decided to exercise their discretion as the jury to impose life without parole, but they found that he constituted a future danger. If Mr. Malvo is entitled... A future danger is incorrigibility? It could be, Judge Niemeyer, because Montgomery did not say what incorrigibility requires. It means irretrievable depravity. They talked about the transient immaturity of juveniles and the nature of a juvenile and the development of a human being and what can happen later, and it seems to me, in this case, the argument was made by your own announcement that they couldn't have a lot of evidence about this young man's character before and after and how he was under the influence of John Muhammad and so forth, but the jury was never asked to determine whether he's permanently incorrigible. It seems to me the categorical rule that Montgomery added to Miller, Miller addressed mandatory life. Montgomery said, yes, mandatory life, but then it said even without mandatory life, you cannot sentence a juvenile to life without parole except in the rarest of cases where he's incorrigible. Now the question is, can we conclude that the sentencing process included some determination that he was incorrigible? For the reasons I've given, Judge Niemeyer, we think you can. I want to turn to Montgomery, and it's the claim that it expanded Miller. We certainly agree that there was a significant amount of language from Montgomery. I'm not suggesting it expanded. In my judgment, there is... I agree that they seem to add something to Miller, but what they really purportedly did is to construe Miller, and Miller was something ambiguous, and so they basically said, you cannot sentence... The mandatory aspect is set aside. They're not talking about any sentence of life without parole. They said juveniles cannot get life without parole except if the juvenile is incorrigible. You can read Montgomery to have done that, Judge Niemeyer, but I think then you need to read Montgomery itself as the new rule, and let me try to explain why. That's a good point, but the question is, can we tell the Supreme Court that they had a new rule when they said, no, we're only applying the Miller rule? The question ultimately is, what do you look to in defining what the Miller rule is? Montgomery itself is a Teague case that was taken up by the U.S. Supreme Court on a very narrow question, and the effect of saying that Montgomery essentially supplants Miller or really defines what Miller's new rule is is that every case going forward on direct review, courts will have to look to the Teague case to figure out what the constitutional right is that is being asserted. The only way that Malvo's claim is timely under AEDPA here is under Miller itself, and I would disagree, Judge Niemeyer, that there is any ambiguity in Miller. It was under Miller, but while the case is pending, normally, since Montgomery came more than a year after Miller, normally there's a petitioner has a problem, a Higgins petitioner has a problem, but in this case, I gather the Miller claim was timely. It was. And because of the procedural classes, the stays and so forth, Montgomery was decided while it was pending, so we have no problem in the timing aspect, and now we have to read Montgomery on Miller, and if you read Montgomery, and they talk about the mis-sentencings, the court is trying to comfort the country and all the courts, the lower courts say, you don't have to re-sentence all juveniles. All you have to do, and it won't be a lot of trouble, is give them some parole, and they go on to explain how that's done. Now, why would they have said that if they didn't believe? Well, so Your Honor's question tees up what is a pretty clear point of contention between Miller and Montgomery itself. Miller says on page 479... I'm in an awkward position because I somewhat agree with you, and Justice Scalia pointed that out to me. He did, Your Honor, but still the question is just what does Montgomery taking up on the question under T really stand for, and how is it supposed to be interpreted, and what is, in fact, the new rule? Miller itself says categorically in the opinion, we are not saying that life without parole for juveniles is unconstitutional. The way Your Honor is positing Montgomery's condition is that it is a default unconstitutional. They said it's not unconstitutional, except in the rarest of cases. The sentence I'm reading from is we do not consider Jackson and Miller's alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles. So the Supreme Court disclaimed in Miller... What did they claim the rule was? They said we are barring it. They said affirmatively we are barring it. However, Miller did bar life without parole, Your Honor, for all but the rarest. That's Montgomery. That's certainly Montgomery's gloss line, but it's still the question is what is the rule? We would submit that the right way to read Montgomery is that it made Miller's rule retroactive, and the only way to avoid the constant, I guess, determining of what is incorrigibility, how much process is required, and continually applying that retroactively on collateral review is to say that you look to Miller, Miller prohibited mandatory sentencing schemes. And one point I do want to leave the Court with is that is in and of itself a substantive rule. It is very much important to criminal defendants that the state legislature can't mandate that they'll die in prison, that a court has to have the opportunity and the authority to exercise discretion in sentencing. I reserve the remainder of my time for rebuttal. All right. Thank you. Mr. Cooley. May it please the Court. My name is Greg Cooley, and I stand to respond on behalf of Lee Boyd Melvin. I might also point out I was the co-lead counsel at trial in this case, so I am the dummy that failed to recognize what should have been seen by us on the horizon, that ultimately life without parole would come under scrutiny and be determined to be a violation of the Eighth Amendment. I don't want to risk snatching defeat from the jaws of victory. You don't necessarily have any victory at this point. We pressed the state with some questions about what Miller and what Montgomery do hold, but there was a lot of evidence of Malvo's maturity and his youth and his state of affairs were, in that fall, taken into consideration, and the jury surely took that into account, including that the death penalty was not a hope. That is correct, Your Honor. But we do have those statements in Montgomery that seem to require consideration before you can enter such a consideration of questioning whether Mr. Malvo was incorrigible. Yes, Your Honor. And I'm not quite sure how they handled that, whether that's just an explanation or whether that's an expansion of a rule or whether that is a rule of Miller. As you may remember, the district in Montgomery seemed to think it was an expansion, but we have to follow the majority and not the dissent, I guess, don't we? We do. Judge, I would remind the court, and I know this court knows, that in a capital murder trial in Virginia, when there is an election between a death penalty and life without parole, the jury must make that selection, but it takes only one nay vote from a juror to bar or prohibit a death penalty. In other words, they have to be unanimous for a death penalty. Otherwise, the default has been and always was, until at least this ruling in Jones, that a life without parole or life before 1999, I believe is when the without parole issue came into the language of the ruling. But at that point in time, the jury just takes one juror to say, no, I don't want a death penalty, I'm not going to vote for that, and that's the end of it. We have a life sentence. In the Malvo case, this jury unanimously determined that life without parole was the proper sentence because it was the lowest that they were allowed to give under the instructions given to them, offered by the prosecutor, not objected to by the defense, and given to them by the trial judge. They opted unanimously to go as low as they could under the structure that they were given on that day. And I suggest to this court that that should at least suggest that there was a potential, given the opportunity, that they would have come below life without parole. And certainly when Judge Rausch sentenced him in March of 2004, it was her belief, it was the prosecutor's belief. Was that Chesapeake or Spotsylvania? That's Chesapeake.  That she had no options except to impose the verdict that the jury had written. I'm just going to wait. You're saying that that's the law of the case. That was the law of the case in 2003. Everybody understood that was the law of the case, and that's your estimate kind of doesn't apply to the law of the case doctrine here. That is correct. And, Judge, I'm... You're not challenging this fellow's convictions in the Eastern Court. No, sir. You're asking for a hearing on a recent... That is correct. ...on whether this permanently incorrigible question, where he falls in that. That's correct. That's all you're asking for? That's correct. And you got that from the district court. I did. And the question... We did. What about the lay awareness thing? Do you challenge the voluntariness? The area that I would challenge first and foremost is that the plea agreement, he did not waive his constitutional right. I'm asking you whether you challenge the voluntariness. I do in this respect and in this regard, Your Honor. We were in this posture. What we know looking back now is that the two choices given to the jury and the two choices given to the trial judge were both unconstitutional. Both were unconstitutional. Brady sort of undermines that. Brady sort of says that if you plead guilty in order to avoid the death penalty, that that's not something to consider. My big question, I had some questions with your colleague, but my big questions to you in this case are, why couldn't he plead guilty to life without parole in two counts, one of which didn't even mandate the attempt? He could have gotten 20 years. But in exchange for the life without parole on two counts, he got the dismissal of all the other counts and the charges. And avoided the death penalty. And avoided the death penalty. I understand. And so my question is, and he had counsel explain all that to him, and apparently voluntarily agreed to those, to pleading guilty to those two counts and receiving that sentence on those two counts. I guess the word that I would lock in on would be the word knowingly. Does he knowingly and intelligently waive, voluntarily waive his rights? Well, in this case, Judge, it seems to me we were in a posture, and you've got to go to the specifics of this case. He, at that point in time, had already been sentenced to two sentences of life without parole. So the option for him is to stay where I am or roll the dice and seek a death penalty potential. That's where we were. That's Brady. That's the choice that Brady was facing. But you aren't challenging the conviction in Brady or challenging the conviction? That's correct. We do not dispute that he is guilty. We have never disputed that in terms of whether he was a participant in the acts. In Chesapeake, we raised the issue of sanity. But in the Swaziland case, because we already had life sentences without parole. You never sent him in both those cases? I did. Along with my colleagues. Right. You were involved in particular in those negotiations in Spotsylvania. That's correct. But the plea agreements were legal at that point in time, weren't they? I can't imagine we would have entered into them if we did not think so. And entering into them, we had, what was it, Dingell and Brady? And sure, one goes to guilt and one goes to sentence. But the package was there was a plea upon sentence. And then on two counts, one of which didn't demand that alternative. And I understand all the motives. I'm not suggesting that's even an issue that I personally follow. It's not something the lawyers could order or heed. But that's the problem with this retroactivity. The Supreme Court has said things are retroactive, but some things are not. And with Brady, I think they thought, we don't reopen our plea agreements. Because if at the time it was legal, he could have made that choice. And, again, in my mind, we are in a posture right now where this young man, with advice of counsel, and with no one suggesting that there could ever be any kind of reduction below what the offer was and what he was already serving. Well, sure they could. I mean, they count on the attempt. He could have gone as low as 20 years on that, right? That is correct. He could have. And had he gone to 20 years, we would not be here. But we were in a posture of having to take that. But it was a negotiated deal, obviously. It was. And I understand the motives. I'm not faulting that at all. I don't mind being faulted if it gets us where we would like to be to have a recess. It's a little bit like Star Trek. One of those movies, they had the father and the son or the grandson talking to each other from different ages. Retroactivity has the law of time when nobody knew the law of time. Exactly so. And what's unique about this case is that both options for both the judge and the jury in Chesapeake are now unconstitutional. And none of us foresaw at least the second step. Many of us were actively involved in hoping to eliminate the death penalty for those who were under the age of 18. So in that sense, you're saying that this is different from Dingell because your client, Mr. Malveaux, actually is challenging the sentence that he actually received. Yes. Well, he didn't receive the sentence from the court in the sense that the government and your team agreed to the sentence. It's sort of like a sea plea. It's in the federal court. There's an agreed to sentence. The court in Virginia always has the option to reject a plea agreement. Sure. And you do in the federal court. But if you have a plea agreement that agrees to a sentence, the court can either accept it or reject it. That is correct. But that's different from a plea agreement where somebody pleads guilty and then asks the court to sentence them and the court makes its independent judgment. Here, there was an exchange. The government's decision to go along with the plea agreement and the sentence was in part based on the fact they gave a letter of prosecution and they elevated the sentence on the one hand. The other hand, it avoided the capital punishment. Yes, sir. But again, recognizing there are many cases that come up where the individual makes a deal to avoid a higher penalty and take a lesser penalty. But in this case, what we were giving up was the possibility of getting a death penalty and no downside, if the court looks at it that way. We already had life with April. He's going to die in prison as he stood before the court when we were in Spotsylvania, period. No question. How do you get around the plea agreement, the primality of plea agreements, the enforceability of them when they're entered into voluntarily and in accordance with law at the time? I thought that Judge Jackson in his ruling addressed a number of things and I thought his analyses of those were strong. I thought they were accurate. The rules or the principles of contract law have to yield to constitutional demands. The Eighth Amendment says, as you just… You're saying he agreed to an illegal sentence? He agreed to what is now an illegal sentence, a nonconstitutional sentence. Why isn't it legal now? He could do the same thing today, couldn't he? In other words, let's assume, just for the purposes, let's assume Montgomery says, you can sentence a juvenile to life without parole provided you have this finding. I don't know, a finding, at least consideration. And he says, I'm going to plead guilty to life without parole and for my crime in this case. And I'll avoid the death penalty and although he's a juvenile, he doesn't have a death penalty. Why couldn't he do that today and make it illegal? I will answer the question in this way, but that's a very valid question. Could he plead guilty to life without parole today? The answer is yes. Could he be sentenced to life without parole today unless and until the trial judge… He couldn't agree to that? No, he could agree to it, but the court could not accept it until the sentencing court made the inquiry that is required by Miller Montgomery. The court would still have to, even if the court isn't asked, Miller Montgomery says that a life without parole sentence is excessive, it is unconstitutional, unless there's eligibility for parole or the sentencing judge makes this inquiry, determines, looks at youth and its attendant circumstances, looks at those as sentencing factors and determines that this is the rare individual who it's appropriate to take this child and determine that that child is irreparably depraved. Once that decision is made, the judge can say, okay, Mr. Malvo, I accept your plea agreement if he has made that agreement today. Well, he's not really agreeing to anything in that context, I don't think. He's simply agreeing to be considered for a life sentence without parole. Is that a consideration? Well, I think, I'm not sure I'm following the theory there, but it seems to me that the trial judge's mandate, I mean, the one mandate under Miller Montgomery is that the trial judge has to make that inquiry unless the child is eligible for parole, and unless and until they do that. Except, you know, when you convict somebody in a criminal case, you have to comply with Brady, and the government didn't comply with Brady in a given case, hypothetically, and that was the incriminating evidence. Yet the man pleads guilty because it maybe can be proved, or there's some other aspect. He pleads guilty and gets a sentence, agreeing to sentence. He can do that, can't he? The question I have is, your remedy actually asks us to vacate the plea agreements, right? It's the only way we can do it. No, sir. Just vacate the sentence because it's tied up in the plea agreement. The government agreed to these two sentences in exchange for pleas, a heavy plea on this attempt, and an agreement for its blocking the charges in all the other cases, other counts. And so in order to get at what you want, we have to open up the plea agreement, not just the sentence, because the government says, we didn't just agree to a sentence, we agreed to a bunch of things. I think the remedy would be, one, this court would rule that that sentence is unconstitutional and that Mr. Malvo is not held to the agreement that was struck through. See, that's my point. I don't know if it is unconstitutional. Well, you don't raise it in a vectored council. You don't raise it in a six-amendment plea agreement. No, sir. But the Commonwealth could then say, in sponsorship. Earlier, he could agree to life without parole. If the child did. He could agree to it, but that doesn't mean he can be sentenced to it. Because the trial judge, whether he's asked or not, whether the defense attorney asked for it. You're saying a court can't agree to a plea agreement, an 11-C plea agreement, where the man says, I've been advised by my counsel, I do it voluntarily, I know all the consequences, I know all the constitutional law, I'm pleading guilty to life without parole. He could do that today. I think he could do that only. Could he plead to that? Yes. Can the judge sentence him to that until this inquiry is made? The answer is no. His plea waives all that. He cannot waive the constitutional right when you have. He can waive a right to a trial. That's constitutional. Why couldn't he waive everything else, too? I articulated that poorly, and I apologize. He cannot waive the requirement that has been established in Miller-Montgomery that before a trial judge can sentence somebody to this, they have to make this inquiry. But he's waiving all that. He's waiving that just like he's waiving a rape violation or he's waiving a search, Fourth Amendment violation. In other words, when you plead guilty, there are a lot of reasons you do it. And if it could be done today, it seems to me then the question is why couldn't it have been done back then? Now, he didn't have the knowledge of Miller-Montgomery when he did that. But I don't see how we could give a remedy without opening up the plea agreement. Now you have some complications with that because now you have these other convictions and other prosecutions which have been dismissed in the plea agreement. And if the plea agreement is breached or set aside or the Commonwealth came in and said, you know, part of this deal was we wouldn't prosecute him on this, I think they would be legitimately correct in being able to rebring those. If the premise of the plea agreement has been whether it was by constitutional edict, whether it was by the court's determination, I think they would be legitimately able to come back and say, you know, we'd like to prosecute on these cases as well. And that may be the issue today is whether he could have. When he gets ready to make a plea and says, I'm going to take life without parole, the trial judge is in the same posture that Miller and Montgomery say that's why we make this inquiry, because of his use. The court said we have to have some finality of these plea agreements. They're acceptable process in the courts. And one of the risks that a person being guilty and 11C is that the law may change in the future. But Brady said we're going to enforce it. When were these crimes committed? 2002. And here we are in 2018. Yes, sir. And none of us knew about it. Mr. Cooley, let me, just so I understand your position with respect to the pre-trial, to the plea agreement, because I asked you an earlier question about exactly what Mr. Malvo is providing in terms of consideration. It seems to me at least he's agreeing to plead guilty. He's relieving the state of its obligation to prove these crimes beyond a reasonable doubt. So that's valid consideration. But I don't think it's appropriate to say that he's agreeing to plead to a life sentence without parole, because under your theory he can't. He's only agreeing to plead to a sentence that makes him eligible for that sentence, and then it's up to the judge or whatever process Virginia comes up with to hold that hearing, you say is required by Miller. Yes, sir. Is that what you're saying? I believe that the mandate is that before any sentence, I mean the language is very clear that a life without parole for a child is an excessive unconstitutional sentence, period. And that is the case for all but the rarest of young people who are determined to be, the court determines after hearing evidence and makes the determination after considering those factors, that this child is irreparably and permanently depraved. And that's the only opportunity for the court to then impose this sentence. Until that is done, the mandate of Miller Montgomery has not been met, and that changes the equation in terms of whether or not Mr. Malvo or any juvenile who was in the same posture or similarly situated could enter into an agreement to take life without parole without the court. The judge has to do this, period. There is an equivocation. And if the judge had known, of course, that in 2002 or whatever this was, if he'd known of Miller Montgomery, he couldn't have gone forward and imposed the sentence. He did? He couldn't. Both judges would have had to have held that hearing before sentencing to life without parole. And I believe both judges would have, but they didn't know that was a requirement at the time, and nor did they know that there was any option except to impose either death or life. You make it sound like the state ought to just confess to error here and give him a hearing and go on forward. I'm sorry? You make it sound like the state should just confess to error in this case and have the resentencing hearing and go on forward on it and turn it over with. They say he's incorrigible anyway. That's right. If they're so confident of this, give us our shot. He's not incorrigible to nobody. That's what they say. That's what they just said up here? Yes, sir. That is exactly what they say, and that is exactly what I would disagree with. And I believe it. You'd like to have to litigate that? Yes, sir. All right. Thank you, Mr. McGuire. Thank you, Your Honor. Mr. McGuire. May it please the Court. Approximately three points on rebuttal. I want to start with Judge King's last point, which is that there's very little that intrudes on state sovereignty to the degree that it does when you reopen these long final criminal convictions. And the idea that the state should have just gone forward with a resentencing hearing here overlooks very serious practical and real burdens that it imposes on the state to have to transport the inmate to the federal court or to the state court for resentencing. One of the last death row inmates in Virginia actually murdered somebody in the course of being transported for medical appointments. There are very real serious considerations for the state in not holding unnecessary court hearings for particularly violent criminals, which nobody can dispute Mr. Malvo is. In response to one of Judge King's earlier questions where I didn't know the answer, that jury instruction has been around for approximately 20 years, Judge King. And then I want to turn to the guilty plea. To be around for 20 years, it was promulgated and approved by the Supreme Court of Appeals. The Virginia Supreme Court has precedent on the issue, which is that The jury instructions were approved by the Supreme Court. This is what you tell them in that murder case. Correct, Judge King. It's defendant-friendly because you don't want the jury to think that the defendant might get out of prison, so it's designed to provide protections against them imposing the death penalty. It came at the rubber stamp of it. That's correct, Judge King. That's where it comes from. On the guilty plea aspects of this case, we believe that he has waived any challenge to his Spotsylvania sentences because it was one complete package in exchange for giving up the right to try him for another death-eligible charge pre-roper for the murder of Mr. Bridges. The Commonwealth's attorney, also Noel Pross and other charges, agreed on two counts to stipulate the life without parole sentences, both the capital murder offense as well as the attempted capital murder offense, which did not carry anything like a mandatory sentence. And so under the U.S. Supreme Court's decision in Brady v. United States and this Court's decision in Dingell, that decision to try to avoid the more severe punishment in exchange for a reduced sentence is just a waiver of the claim. Even though the reduced sentence is now itself illegal? Well, so, Judge Diaz, it's not illegal. It sort of goes back a little bit to our earlier discussion this morning, which is the life without parole sentence in and of itself is not illegal. The only question is whether or not he can waive the right to have the judge make the incorrigibility finding if that is actually required under the law. Yeah, I guess I'm processed by what you were writing in that sentence. Correct. I mean, and I think it's helpful if the Court takes a step back and thinks about what the rule Malvo is asking for really is. It absolves defense counsel, the defendant, and everybody else of, including the state, of any obligation to come forward with a mitigation defense in these cases. What he is saying is it's the trial court's responsibility, sua sponte, no matter what we offer, to go out and determine if this person is incorrigible before imposing a sentence that I agreed to. I mean, it's unclear if the trial court would have to appoint expert witnesses on its own. Would it have to subpoena fact witnesses? There's not much like that type of argument in the law. I don't understand. Are you suggesting that in these scenarios that defense counsel would be likely to sit there like a potted plant and present no evidence? Well, Judge Diaz, it's odd. So there's two points to that. One, it's an odd thing to say that we as defense counsel would recommend that he enter into this plea deal with stipulated life without parole sentencing and then say the judge can't actually sign that plea agreement that we told him to agree to unless the judge goes forward and makes all these other findings. What I'm supposing is how is the judge supposed to do that if the defense counsel has decided not to put on the mitigation defense? The second point is, under that theory, it's unclear why a prosecutor would ever agree to a plea deal like this because if you're not actually going to get the benefit of your bargain in the form of the stipulated sentences, you should go forward with the trial anyway. Well, the plea deal, part of the bargain is you don't have to put on your case on the merits. It pleads guilty to a sentence of an offense which is eligible for a life sentence on the condition that you go through the process of providing the hearing that Miller and Montgomery seem to suggest is required. And that presupposes, though, Judge Diaz, that the prosecutors here didn't want to prosecute the death penalty charge. The way Malvo's counsel postulated this morning, for him, there was no downside to pleading guilty because he had already been sentenced to life without parole twice. To the extent that a Spotsylvania County prosecutor thought he deserved a death sentence pre-roper for the absolutely heinous nature of these crimes, the Spotsylvania County prosecutor gave that up in order to just take the two stipulated life sentences, including for a sentence that did not carry that sentence at all. And so I just don't see how this case is anywhere it can be distinguished, really, from Brady and Dingell where, in exchange for avoiding the death penalty, he just chose to take two lesser sentences. But what about in today's environment? Could the defendant waive that right to a hearing, the Miller-Montgomery hearing, in the context of an environment where there is no opportunity for a death sentence? So in a case, it's harder to see why he would enter into a plea agreement like that today where the death sentence is off the table, but that's exactly what Dingell was talking about and Brady, where they said we would never have taken this plea if the death penalty had been unconstitutional at the time. And for that reason, it's just indistinguishable from this case, unless there are further questions. What's the impact here, if any, of Jones' decision? So, Judge King, as a matter of state law, and this Court has said this now in two unpublished decisions, Pinkney v. Clark and Contreras v. Davis, where the decision of the Virginia Supreme Court is a decision of state law that the judge has always had the authority to suspend sentences in whole or in part. And Jones can't be reviewed by this Court because it's a state law determination. And so that sort of opens up the question, we think, of whether or not, it really begs the question of whether or not suspension is enough to make a sentencing scheme non-mandatory. Malvo has never pressed that argument in this case, and this Court shouldn't reach that question because it's a complicated one under Solemn v. Helm. But that's the way you would go about interpreting Jones, the extent you don't agree that suspension necessarily is enough. As a result of Jones, did they change that standard of instruction that you were talking about? Not to my knowledge, Judge King, because it shouldn't really come up anymore. It's no longer the death penalty here for juveniles, so you shouldn't have this type of capital murder case where you would get that instruction. Well, doesn't the Jones opinion, as in only relevant if we're considering the narrow question of whether Malvo's sentence is mandatory? Correct, Judge Niemeyer. And Miller focused a lot on the mandatory life without parole. We would submit, Judge Niemeyer, that Miller on its own terms, and it says multiple times what its holding is, is that it focused on state law mandated life without parole sentences. And Montgomery, we've Without individualized consideration of the circumstances. I'm not sure that the holding went that far. The holding itself was The rationale The rationale from Miller was that the court had to have discretion, the defendant had the opportunity to present evidence. The question the court is grappling with this morning, as I understood our conversation earlier, is did Montgomery make that broader? Did it focus more on that individualized question? In other words, the mandatory is not hard to handle. That is something everybody would agree on. But Montgomery seemed to restate Miller in terms that it addressed not only mandatory, but addressed the reasons for why you don't have mandatory and said not only do we prohibit mandatory, but we prohibit life without parole of juveniles, except in the rarest cases. And the rarest case they defined as, when it's a demonstration of incorrigibility. So it seems to me it could be lying in the bushes in Miller. If you were looking at shadows and interpreting that, or looking at clouds and interpreting clouds. Montgomery made it, I thought, a new ballgame in that regard. In other words, what you take away is that no juvenile in any circumstance can get life without parole, unless the juvenile is shown incorrigibility. So ultimately, Judge Niemeyer, I do think that is the critical question on the first issue we presented for review. And if I could, I'd offer two short responses to it. The first is there is a great deal of doubt in the federal courts and everywhere about what Montgomery itself means, because several times in the opinion, the court says that we hold, the court says, quote, the court's holding in Miller that mandatory life sentence is with parole. The court now holds that Miller announced a substantive rule of constitutional law. The court goes back and forth in Montgomery. They defined the rule. They went on in the very next paragraph to actually define the rule of Miller. Well, that was going to be my second point, Judge Niemeyer. I would say they're not so much defining the rule as they're explaining why it satisfies Teague. Why Miller is, in fact, a substantive rule. So I think the way you would look at it is, and I guess the broadest way you could read Montgomery here from our perspective would be you cannot have mandatory state-imposed sentences. And then Montgomery goes on to try to talk about what constitutes a discretionary sentencing scheme. But as I said a few minutes ago, they have not really pressed an argument about whether the suspension scheme is enough to satisfy the discretionary aspects of this, because I do think that argument is tied up in Solemn v. Hellman whether executive decisions are sufficient or equivalent to parole, in effect. So does suspension fall somewhere in between the two? Since parole would be enough here, but executive clemency wouldn't. So we would submit the best way to read Montgomery is based on its holding and the question the court took, which helps resolve some of the thornier issues in these cases. Thank you. Thank you.
judges: Paul V. Niemeyer, Robert B. King, Albert Diaz